UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL LEE SCHANZENBAKER,<br><br>                    Plaintiff,<br><br>     -vs-<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,[1]<br><br>                    Defendant. | No.   2:13-CV-0194-WFN<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Before the Court are cross-Motions for Summary Judgment (ECF Nos. 18 and 19). Attorney Dana Madsen represents Plaintiff. Special Assistant United States Attorney Jeffrey Staples represents Defendant. The Court has reviewed the administrative record and briefs filed by the parties and is fully informed.

## JURISDICTION

Plaintiff applied for supplemental security income (SSI) benefits on February 17, 2009, alleging disability beginning on November 15, 2002, due to physical and mental impairments. Plaintiff's application was denied initially and on reconsideration.

A first hearing was held before Administrative Law Judge (ALJ) James Sherry on September 1, 2010. The ALJ, with the consent of Plaintiff's counsel, amended the onset

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 1

date to March 5, 2007. The ALJ determined that the Plaintiff was not disabled. The Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded for further proceedings. (Tr. at 157-59.) A supplemental hearing was held on September 18, 2012 before the same ALJ. At the supplemental hearing, Plaintiff, represented by counsel, testified as did W. Benton Boone, M.D., a medical expert (ophthalmologist), Scott Mabee, Ph.D., a medical expert, and Sharon Welter, a vocational expert (VE). After the supplemental hearing, the ALJ concluded that Plaintiff was, in fact, disabled but not entitled to SSI because Plaintiff's substance use disorders materially contributed to his disability. The Appeals Council denied Plaintiff's second request for review making the ALJ's decision the final decision of the Commissioner. Plaintiff timely sought judicial review pursuant to 42 U.S.C. § 405(g).

## FACTS

The facts of the case are set forth in detail in the transcript of the proceedings and are briefly summarized here.

Plaintiff was 63 years old at the time of the supplemental hearing. (Tr. at 96.) Plaintiff completed school through the 12th grade and afterwards attended culinary school for about nine months. (Tr. at 60-61.) In the past, Plaintiff worked as a construction/demolition laborer, cook, cement grinder operator, dishwasher, and housekeeping staff member. Plaintiff has a history of legal problems and has spent a significant time in prison. Plaintiff also has a history of drug and alcohol abuse. Since 2007, Plaintiff has participated in five drug treatment programs, but continued to use alcohol and marijuana after completing these programs. (Tr. at 94.) At the supplemental hearing held September 18, 2012, Plaintiff stated that he had been sober for approximately two years. (Tr. at 103.)

Plaintiff claims to be disabled and unable to work on account of poor eye sight, pain in his legs and knees, and mental disorders including depression, anxiety, and difficulties with social functioning. Despite his impairments, Plaintiff reports that he can walk distances between one and two miles (albeit with pain and periodic rest breaks), prepare

simply meals, clean his studio apartment, go grocery shopping, and complete chores such as dishes and laundry. Plaintiff spends most his time at home watching television. (Tr. at 103.)

## SEQUENTIAL PROCESS

The Social Security Administration (SSA) has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d 1190, 1193-94 (9th 2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

At step one, the ALJ determined that Plaintiff did not engage is substantial gainful activity since March 5, 2007, the amended alleged onset date.

At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disk disease; possible chronic obstructive pulmonary disease; depressive disorder/major depressive disorder with mixed anxiety; personality disorder with antisocial features; and substance abuse (primarily alcohol in the relevant period).

At step three, the ALJ found that Plaintiff's mental impairments met Listings 12.04 (affective disorders), 12.08 (personality disorders), and 12.09 (substance addiction disorders) described in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. §

416.920(d)).  But the ALJ also concluded that, if Plaintiff stopped his substance use, none of the impairments or combination of impairments would meet or medically equal any of the Listings (but the impairments would still be considered severe).

At step four, the ALJ found that, if Plaintiff stopped the substance use, Plaintiff would have the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 416.967(c) subject to numerous physical, environmental, and social restrictions.  The ALJ further found that, if Plaintiff stopped the substance use, Plaintiff would be able to perform past relevant work as a linen clerk, cook helper, and grinder operator.

Although the ALJ was not required to proceed to step five after finding that Plaintiff was capable of performing past relevant work, the ALJ went on to find that, even if Plaintiff was not capable of performing past relevant work, Plaintiff could make a successful adjustment to other work.  The ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs existing in the national economy that Plaintiff could perform, including work as a fish cleaner, dining room attendant, or laundry worker.

## STANDARD OF REVIEW

In *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. [*Tackett*, 180 F.3d at 1097].  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the ALJ did not apply the proper legal standards in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ISSUE

Did the ALJ err in finding that Plaintiff had a substance abuse disorder and that such disorder was a contributing factor material to Plaintiff's disability?

## DISCUSSION

At step three, the ALJ found Plaintiff disabled because his psychological impairments met Listings 12.04 (affective disorders), 12.08 (personality disorders), and 12.09 (substance addiction disorders). Defendant does not contest this finding. The parties' real dispute is whether (1) the ALJ applied the correct legal standards in determining that Plaintiff's alcoholism was a factor material to his disability, and (2) whether there is substantial evidence in the record to support such a finding. The Court finds that the ALJ did not apply the correct legal standards and that the ALJ's decision is not supported by substantial evidence. Therefore, the decision of the ALJ is reversed and the case remanded for calculation of benefits.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

The Social Security Act bars payment of benefits when drug addiction or alcoholism (DAA) is a contributing factor material to a disability claim. 42 U.S.C. §§ 423(d)(2)(C) & 1382(a)(3)(J); *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001). If there is evidence from an acceptable medical source that Plaintiff has a substance abuse disorder and the claimant succeeds in proving disability, the Commissioner must determine whether DAA is *material* to the determination of disability. 20 C.F.R. § 416.935; SSR 13-2p at ¶ 8(b)(i) (Feb. 20, 2013), *available at* 2013 WL 621536. That is, the ALJ must perform the sequential evaluation process a second time, separating out the impact of the claimant's DAA, to determine if he would still be found disabled if he stopped using drugs or alcohol. *Bustamante*, 262 F.3d at 955. DAA is a materially contributing factor if the claimant would not meet the SSA's definition of disability if claimant were not using drugs or alcohol. 20 C.F.R. § 416.935(b).

**1. Existence of DAA**

Plaintiff contests the ALJ's finding that Plaintiff had a severe substance abuse disorder (primarily alcohol) during the relevant period. (ECF No. 18 at 13.) Plaintiff is correct in pointing out that many reports diagnosing Plaintiff with substance abuse disorders were made prior to the relevant period and, therefore, have little relevance. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevant."). During the relevant period, Plaintiff argues that his alcohol use was "spotty" and did not rise to the level of DAA. (ECF No. 18 at 13.) It is true that a claimant's "occasional maladaptive use" of drugs or alcohol does not establish DAA. SSR 13-2p at ¶ 1(b). A review of the record, however, reveals that Plaintiff's consumption of alcohol is more than "occasional maladaptive use." *Id.* To the contrary, the record is replete with references to Plaintiff's consumption of alcohol during the relevant period.

- In a March 15, 2007 group progress report, Plaintiff's counselor wrote that Plaintiff went on a "two day drinking binge." (Tr. at 516.)

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- In a March 19, 2007 progress note, Plaintiff admitted to his counselor "to drinking on Tuesday and Wednesday of last week." (Tr. at 514.)
- On July 7, 2007, Plaintiff's counselor called Plaintiff after Plaintiff had missed his appointment, and reported that Plaintiff's "speech was odd," and that Plaintiff "admitted to celebrating the Fourth of July by drinking." (Tr. at 684.)
- On August 13, 2007, Plaintiff's counselor noted that Plaintiff missed his appointment and that Plaintiff "sounded intoxicated, and reported drinking recently." (Tr. at 680.)
- On August 22, 2007, Plaintiff's counselor noted that Plaintiff "last drank 2-3 beers two weeks ago" and that Plaintiff "reported being not certain if he can stop drinking." (Tr. at 679.)
- On September 13, 2007, Plaintiff's counselor called Plaintiff and Plaintiff "reported he was on his 4th beer." (Tr. at 678.)
- On September 19, 2007, Plaintiff reported to his counselor that "he had stopped all his meds, and that he now drinks a 6 pack of Keystone Ice 16 oz[.] everyday [sic] to help him get to sleep." (Tr. at 677.)
- On October 1, 2007, John McRae, Ph.D. noted that Plaintiff reported that he "last used alcohol about three weeks ago" and that "he may use alcohol up to a couple of time a week." (Tr. at 566.)
- On October 1, 2007, Plaintiff underwent a psychiatric assessment conducted by Dr. Gillespie. Dr. Gillespie wrote that Plaintiff had battled alcoholism since 2005, drinks a six pack of beer to fall asleep, and that "he [has] problems with alcohol at the present time." (Tr. at 698.)
- On October 18, 2007, Plaintiff's counselor called Plaintiff and reported that Plaintiff "sounded intoxicated, and admitted to drinking." (Tr. at 675.)
- On November 12, 2007, Plaintiff reported to his counselor that "he missed his appointment because he'[d] been drinking." (Tr. at 672.)

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

- On November 16, 2007, Plaintiff reported to his counselor that "he started drinking again two weeks ago." (Tr. at 671.)
- On December 5, 2007, Plaintiff reported to his counselor that "he'[d] been drinking for 'a couple days.'" (Tr. at 669.)
- On December 11, 2007, Plaintiff underwent a psychiatric assessment conducted by Dr. Howard Grindlinger. Dr. Grindlinger diagnosed Plaintiff with "alcohol dependence, binge type" (Tr. at 695), and observed that Plaintiff "has had ongoing problems with alcohol abuse" (Tr. at 692), and that "he has had at least one binge in the last few weeks" (Tr. at 694).
- On February 11, 2008, Melissa Allman, ARNP, noted that Plaintiff had a history of alcohol and polysubstance abuse and noted that Plaintiff "use[s] alcohol now and notes that his use is much less than in the past." (Tr. at 691, 700)
- On May 27, 2008, Plaintiff underwent a mental RFC assessment conducted by James Bailey, Ph.D., who diagnosed Plaintiff with "Al[c]ohol/polysubstance dependence by h[istory]." (Tr. at 713)
- On June 26, 2008, Plaintiff reported to his counselor that "he has not dr[u]nk [alcohol] for 1 month and has to do random UA's for his probation officer." (Tr. at 897.)
- On August 26, 2008, Plaintiff underwent a psychological/psychiatric evaluation conducted by Dr. McRae. Plaintiff reported to Dr. McRae that he had last used alcohol and marijuana on July 12, 2008. (Tr. at 772, 775.) Dr. McRae diagnosed Plaintiff with "cannabis and alcohol abuse." (Tr. at 772, 776.)
- On January 28, 2009, Plaintiff appeared at therapy intoxicated, and reported drinking about "a 6 [pack] of beer per day." (Tr. at 875.)
- On February 19, 2009, Plaintiff's counselor reported that Plaintiff "continues to use alcohol at times." (Tr. at 850.)
- On May 27, 2009, Plaintiff underwent a psychological evaluation conducted by John B. Severinghaus, Ph.D. Plaintiff reported to Dr. Severinghaus that he last

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 8

drank alcohol "four months ago." (Tr. at 779.) Dr. Severinghaus diagnosed Plaintiff with "Polysubstance dependence, in possible partial early remission (alcohol) and complete early remission (street and prescription drugs), provisional." (Tr. at 780.) Dr. Severinghaus suspected that Plaintiff was "clean at this time, since his recent release [from prison]." (Tr. at 780.)

- On July 13, 2009, Plaintiff reported to his counselor that he had relapsed and that was the reason he had not been attending group therapy. (Tr. at 812.)
- On July 27, 2009, Dave Sanford, Ph.D., performed a mental RFC assessment on Plaintiff. Dr. Sanford diagnosed Plaintiff as suffering from "alcohol abuse" (Tr. at 791), but concluded that there were no psychological reasons preventing Plaintiff from pursuing employment (Tr. at 799).
- On August 28, 2009, Plaintiff reported to his counselor that "he hasn't drank alcohol for 6 [weeks]." (Tr. at 801.)
- On September 18, 2009, Plaintiff underwent a psychological evaluation conducted by Kayleen Islam-Zwart, Ph.D. Plaintiff told Dr. Islam-Zwart that "he was drinking a 12-pack of beer a day until one month ago, although he note[d] a brief period of abstinence after he completed treatment three years ago." (Tr. at 838.) Dr. Islam-Zwart diagnosed Plaintiff with "alcohol dependence." (Tr. at 840.)
- At the first hearing before the ALJ on September 1, 2010, Plaintiff claimed that he had quit drinking alcohol four years prior to the hearing. (Tr. at 65.)
- On October 22, 2010, Plaintiff saw Dr. Islam-Zwart for a second psychological evaluation. He apparently told Dr. Islam-Zwart that he "drank regularly until last year" and Dr. Islam-Zwart diagnosed him with having "polysubstance dependence in full sustained remission." (Tr. at 938.)
- On September 20, 2011, Plaintiff saw Dr. Islam-Zwart for a third psychological evaluation. At that time, he "maintain[ed] that he last drank alcohol about one year ago" and that he "[did] not miss drinking." (Tr. at 951.)

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 9

- At the supplemental hearing on September 18, 2012, Plaintiff stated that he hadn't consumed alcohol for "a couple years now, not sure how long it's been, but it's been a while." (Tr. at 103.)

Many of these references to Plaintiff's consumption of alcohol were based on Plaintiff's self-reporting, which by itself cannot establish the existence of DAA. *See* SSR 13-2p, at ¶ 8(b)(ii) (A claimant's "self-reported drug or alcohol use" does not "by itself . . . establish DAA."). But over the relevant time period, several of Plaintiff's treating and examining physicians diagnosed Plaintiff with substance abuse disorders. (Tr. at 567, 695, 698, 713, 772, 776, 780, 791, 840.) These diagnoses are acceptable medical opinions that establish the existence of DAA during the relevant period. The ALJ did not apply an incorrect legal standard in finding that Plaintiff had DAA during the relevant period and substantial evidence supports that finding.

**2. Materiality of DAA**

The ALJ found Plaintiff's DAA a materially contributing factor to his disability. But in reaching this conclusion, the ALJ applied an incorrect legal standard. Furthermore, the ALJ's determination that DAA is a materially contributing factor to Plaintiff's disability is not supported by substantial evidence.

**a. ALJ's decision**

The ALJ concluded, "If [Plaintiff] stopped the substance use, the claimant would have the [RFC] to perform medium work [subject to some exertional and nonexertional limitations]." (Tr. at 28.) The ALJ found that if Plaintiff "stopped the substance use, the remaining limitations would not meet or medically equal the criteria of listings 12.04 or 12.08, as was revealed in the persuasive testimony of Dr. Mabee." (Tr. at 28.) The ALJ also found that, if Plaintiff stopped the substance use, the Plaintiff would only have "mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation, each of extended duration." (Tr. at 28.) The ALJ then proceeded to determine Plaintiff's RFC and his ability to perform past relevant work.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 10

### b. Incorrect legal standard

The ALJ failed to apply the correct legal standard in finding that Plaintiff's DAA materially contributed to his disability.

DAA is a materially contributing factor if the claimant would not meet the SSA's definition of disability if claimant were not using drugs or alcohol. 20 C.F.R. § 416.935(b). To emphasize, DAA must be *material*; in some situations, "a claimant may be disabled notwithstanding her or his alcohol or drug abuse." *Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001). To determine the materially of DAA, the SSA will "[1] evaluate which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then [2] determine whether any or all of [the claimant's] remaining limitations would be disabling." *Ingram v. Barnhart*, 72 Fed. Appx. 631, 2003 WL 21801532, at *2 (9th Cir. 2003) (citing 20 C.F.R. § 416.935(b)(2)). "[E]ach and every impairment must be considered to determine if the combination of the remaining impairments is severe." *Id.* at *3 (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). A claimant has the burden of showing that DAA is not a contributing factor material to disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

In this case, the ALJ determined that Plaintiff had the following severe mental impairments: depressive disorder/major depressive disorder with mixed anxiety, personality disorder with antisocial features, and substance abuse (primarily alcohol in the relevant period). The ALJ did not evaluate which of Plaintiff's current mental limitations would remain if Plaintiff stopped using alcohol. Instead, the ALJ summarily relied on the testimony of medical expert Dr. Mabee, who testified that, without DAA, Plaintiff would not be disabled. (Tr. at 28; 92.) This was in error. *See Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998) ("[T]he court failed to distinguish between substance abuse contributing to the disability and *the disability remaining after the claimant stopped using drugs or alcohol*. The two are not mutually exclusive. Just because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability

will too."); *Frederick v. Barnhart*, 317 F. Supp. 2d 286, 293 (W.D.N.Y. 2004) (ALJ erred by "gloss[ing] over" materiality analysis "by simply stating that plaintiff's 'mental functional limitations would significantly improve' if she stopped using alcohol."). By not undertaking the first step of the materially analysis, the ALJ also failed to determine whether, after separating the effects of DAA, any or all of Plaintiff's remaining limitations would be disabling. The ALJ failed to apply the correct legal standards to determine the materiality of Plaintiff's DAA.

### c. Not substantial evidence

The ALJ's finding that DAA is a factor material to disability is also in error because it is not supported by substantial evidence. As discussed above, in concluding that Plaintiff's DAA was a factor material to disability, the ALJ relied primarily on the testimony of Dr. Mabee.

A medical expert's testimony is not substantial evidence to reject the opinion of a treating or examining medical provider. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). Non-examining medical advisors, such as Dr. Mabee, are highly qualified physicians and psychologists, experts in the evaluation of medical issues in disability claims under the Social Security Act. SSR 96-6p (July 2, 1996) *available at* 1996 WL 374180. However, the ALJ may give weight to consulting opinions "only insofar as they are supported by evidence in the case record." *Id.*

In this case, the opinion of Dr. Mabee is not substantially supported by evidence in the case record. The ALJ cited to Dr. Mabee's "persuasive" testimony in finding Plaintiff's DAA a factor material to his disability. (Tr. at 28.) The ALJ further found Dr. Mabee's opinion consistent with the opinion of Dr. McRae, who, in a 2006 psychiatric evaluation, opined that "the primary basis for [Plaintiff's] lack of employment had been his substance use." (Tr. at 28 (citing Ex. 3F/25-27 [(Tr. at 444)]).) But Dr. McRae formed this opinion after he examined Plaintiff in November 2006—four months prior to the beginning of the relevant period in this case. (Tr. at 442-44.) "Medical opinions that predate the alleged onset of disability are of limited relevant." *Carmickle*, 533 F.3d at 1165. Besides the fact

that Dr. McRae's report was made outside of the relevant time period, its relevance is questionable given that the same report contains opinions that contradict the ALJ's conclusion regarding the materiality of DAA. For instance, Dr. McRae noted that Plaintiff's mental impairments were neither caused by drugs or alcohol nor that his mental impairments had any relationship to drugs or alcohol. (Tr. at 439.) Dr. McRae also noted that Plaintiff's abstinence from drugs or alcohol would *not* have much of an impact on his diagnosed conditions. (Tr. at 439.)

As pointed out by Plaintiff, there is also some ambiguity about the phrasing used by Dr. McRae in this report. (ECF No. 18 at 13.) Dr. McRae stated that "the primary basis for [Plaintiff's] lack of employment *has been* his substance use." (Tr. at 444) (emphasis added). The Court is unable to determine whether Dr. McRae meant that, historically, Plaintiff's substance abuse prevented him from working, or whether, at the time of the examination, Plaintiff's substance abuse continued to prevent him from working. Regardless, as detailed above, there are additional reasons why Dr. McRae's 2006 psychiatric evaluation has limited relevance.

Contrary to Dr. Mabee's and the ALJ's conclusions, the opinions of Plaintiff's treating and examining physicians during the relevant period support finding that his DAA is *not* a materially contributing factor to his disability.

Dr. McRae examined Plaintiff a second time in October 2007. (Tr. at 562-68.) As a result of his examination of Plaintiff, Dr. McRae diagnosed Plaintiff with "dysthymia & anxiety," "alcohol & cannabis abuse," "cocaine, meth, heroin dependence in full-sustained remission," and "antisocial personality disorder." (Tr. at 563.) Dr. McRae opined that these impairments resulted in several "severe" and "marked" functional mental limitations. (Tr. at 563.) Furthermore, Dr. McRae opined that these impairments were *not* "caused by past or present alcohol or drug abuse" and that sixty days abstinence from alcohol or drugs would have "little" impact on "each diagnosed condition." (Tr. at 563.) Dr. McRae concluded that Plaintiff was "capable of carrying out simple repetitive work tasks done primarily away from other people." (Tr. at 568.) Dr. McRae did not connect Plaintiff's

alcohol use to Plaintiff's mental impairments, but Dr. McRae did mention that "[Plaintiff's] mood and personality disorder appear to be the major factors in the work limitations that he does have." (Tr. at 568.)

Dr. McRae examined Plaintiff a third time in August 2008. (Tr. at 771-77.) Dr. McRae made the same diagnoses as he made at the October 2007 examination. (Tr. at 772.) Dr. McRae again concluded that Plaintiff's mental impairments were *not* caused by past or present alcohol or drug use. (Tr. at 772.) Furthermore, Dr. McRae opined that abstinence from alcohol or drug use would have "*little effect* on diagnosed conditions [because Plaintiff reported that he had not drank alcohol for approximately six weeks prior to Dr. McRae's examination]." (Tr. at 772 (emphasis added).) Dr. McRae again concluded that Plaintiff was "capable of carrying out simple work tasks done primarily away from others," but Dr. McRae was concerned that Plaintiff "may get into conflict with either coworkers or his supervisor." (Tr. at 777.) Dr. McRae again gives no indication that Plaintiff's alcohol use contributed to his mental impairments.

In May 2009, Plaintiff was examined by John B. Severinghaus, Ph.D. Dr. Severinghaus diagnosed Plaintiff with depressive disorder NOS, dysthymic disorder, polysubstance dependence, in possible partial early remission (alcohol) and complete early remission (street and prescription drugs), provisional, and antisocial personality disorder, provisional. (Tr. at 780.) Dr. Severinghaus did not find "any psychological reasons [why] [Plaintiff] couldn't pursue employment at this time," but suggested counseling to help with Plaintiff's "depressed feelings, adjustment issues returning to society and employment issues." (Tr. at 780-81.) Dr. Severinghaus did not opine that Plaintiff's substance abuse contributed to his mental impairments. At the time of the examination, Dr. Severinghaus noted that Plaintiff was "apparently not abusing substances." (Tr. at 780.)

Plaintiff was also examined three times by Dr. Kayleen Islam-Zwart. After each examination, Dr. Islam-Zwart opined that Plaintiff was unable to work based on his mental impairments. (Tr. at 840, 941, 953.) In September 2009, Dr. Islam-Zwart indicated that Plaintiff's mental health symptoms were affected by substance abuse, but that alcohol or

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 14

drug treatment would not likely improve his ability to function in a work setting. (Tr. at 832.) Dr. Islam-Zwart does not elaborate on the extent to which Plaintiff's mental health symptoms were affected by his substance use, although she did note that "[i]t is imperative [Plaintiff] remains abstinent from substances." (Tr. at 840.) In October 2010, Dr. Islam-Zwart again indicated that Plaintiff's mental health symptoms were affected by substance abuse, but that alcohol or drug treatment would not likely improve his ability to function in a work setting. (Tr. at 938.) Dr. Islam-Zwart stated that Plaintiff's alcohol use "likely contributed to [his mental] problems, but is also a function of them." (Tr. at 938.) Dr. Islam-Zwart reflected that Plaintiff's symptoms have "improved a little [since the September 2009 examination], likely due to his abstinence from alcohol for the last year." (Tr. at 941.) In September 2011, Dr. Islam-Zwart found that Plaintiff's mental health symptoms were *not* affected by substance abuse. (Tr. at 947.) This finding was based on the fact that Plaintiff "denie[d] any recent regular [substance] use." (Tr. at 947.)

The only evidence cited by the ALJ in support of his conclusion that DAA was material to disability was the opinion of the medical expert, which in turn relied upon a 2006 report made by Dr. McRae. As discussed above, Dr. McRae's 2006 report has limited relevant. During the time period relevant to this case, Dr. McRae and Dr. Islam-Zwart consistently found that Plaintiff's DAA did not affect his mental impairments and that abstinence from alcohol would have little impact on his mental impairments. Dr. Severinghaus also made no findings that Plaintiff's DAA contributed to his mental impairments. The ALJ's opinion that Plaintiff's DAA is a factor material to disability is not supported by substantial evidence.

Plaintiff finally alleges that the ALJ erred in evaluating the opinions of Dr. Islam-Zwart by not giving specific and legitimate reasons for rejecting her opinions. Dr. Islam-Zwart, on three occasions, concluded that Plaintiff's mental impairments prevented him from working. The ALJ rejected Dr. Islam-Zwart's opinion regarding Plaintiff's ability to work and gave several reasons for why he assigned no weight to that opinion. But the ALJ did not specifically address, or give legitimate reasons for rejecting, Dr. Islam-Zwart's

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 15

opinion that Plaintiff's DAA did not affect his mental impairments and that abstinence from alcohol would have little impact on his mental impairments. Because the ALJ did not even consider Dr. Islam-Zwart's opinions concerning the extent to which Plaintiff's alcohol use contributed to his mental impairments—the question central to whether Plaintiff is entitled to benefits—the ALJ again erred. Because the ALJ did not discuss, or give specific and legitimate reasons for rejecting, Dr. Islam-Zwart's opinions concerning the extent to which Plaintiff's alcohol use contributed to his mental impairments, the Court credits those opinions as a matter of law. *Lester*, 81 F.3d at 834.

The Court affirms the ALJ's conclusion that Plaintiff's psychological impairments meet Listings 12.04, 12.08, and 12.09, but reverses the ALJ's finding that DAA was material to Plaintiff's disability. There is not substantial evidence to support finding that DAA is a material factor to disability, and the weight of the evidence is to the contrary. Plaintiff has met his burden to show that DAA is not a material factor to disability.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAlliser v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, the record has been thoroughly developed for the relevant period and there are no outstanding issues that must be resolved. If the ALJ had applied the correct legal standards, and properly considered the opinions of Plaintiff's examining physicians (particularly Dr. McRae and Dr. Islam-Zwart) regarding the extent to which Plaintiff's DAA contributed to his disability, it is clear that the ALJ would have been required to find Plaintiff disabled. Additional proceedings would serve no useful purpose and would only cause unnecessary delay.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is based on legal error and not supported by substantial evidence. Accordingly

**IT IS ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, filed November 4, 2013, **ECF No. 18**, is **GRANTED**. The final decision of the Commissioner is **REVERSED**, and the case is **REMANDED** for calculation and payment of SSI benefits.

2. Defendant's Motion for Summary Judgment, filed December 16, 2013, **ECF No. 19**, is **DENIED**.

The District Court Executive is directed to file this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** this 11th day of March, 2014.

03-10-14

      s/ Wm. Fremming Nielsen
    WM. FREMMING NIELSEN
SENIOR UNITED STATES DISTRICT JUDGE